UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FISCHER & FRICHTEL CUSTOM HOMES, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Case No. 4:21-cv-470-MTS ) |
| FISCHER MANAGEMENT, LLC, *et al.*, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss, Doc. [36], Count III of Plaintiff's Verified Complaint ("Complaint"), Doc. [1], regarding a state law claim under the Missouri anti-dilution statute, Mo. Rev. Stat. § 417.061.1. For the reasons discussed below, Defendants' Motion is denied.

**I.   BACKGROUND**[1]

Founded in 1945, Plaintiff Fischer & Frichtel Custom Homes, LLC ("Plaintiff"), has provided homebuilding services in the St. Louis area for over seventy-five years. Defendants Fischer Management, LLC and Fischer Homes, Inc. (collectively, "Defendants") also provide homebuilding services but maintain their principal place of business in Kentucky. Recently, however, Defendants acquired the second largest homebuilding business in St. Louis and began identifying the new acquisition as "Fischer Homes" within the St. Louis area. Soon after, Plaintiff received various communications from the public congratulating them on the acquisition. Individuals on social media and news sites also posted comments that incorrectly associated

---

[1] The Court draws this background only from Plaintiff's Complaint, Doc. [1], as it must on a motion to dismiss for failure to state a claim, in the light most favorable to Plaintiff. *Ginsburg v. InBev NV/SA*, 649 F. Supp. 2d 943, 946 (E.D. Mo. 2009).

1

Plaintiff with Defendants.  As a result, Defendants listed a "disclaimer" on their website rejecting any affiliation with Plaintiff and also sent Plaintiff a proposed "co-existence agreement."  Plaintiff requested that Defendants stop marketing its homebuilding services in St. Louis using the "Fischer Homes" name, and Defendants declined to do so.

Plaintiff sued Defendants alleging that use of the name "Fischer Homes" violates Plaintiff's own unregistered trademarks of "FISCHER" and "FISCHER & FRICHTEL" ("Fischer Marks"). Specifically, Plaintiff asserts three claims against Defendants: (1) trademark infringement and unfair competition under the Lanham Act, pursuant to 15 U.S.C. § 1125(a) (Count I); (2) unfair competition under Missouri law (Count II); and (3) a violation of Missouri's anti-dilution statute, pursuant to Mo. Rev. Stat. § 417.061 (Count III). Doc. [1].  In the instant Motion, Defendants seek to dismiss Count III for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. [36].

**II.    LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The purpose of such a motion is to test the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and makes all reasonable inferences in favor of the nonmoving party. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specifically, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause

2

of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). The Court does not decide whether the plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly*, 550 U.S. at 556.

### III.   DISCUSSION

Missouri's anti-dilution statute allows for injunctive relief against a party who causes dilution of a registered mark. *See* Mo. Rev. Stat. § 417.061.1 (stating "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark . . . shall be a ground for injunctive relief"). This statute protects marks both registered under Missouri law and marks and trade names valid at common law. *Zoological Subdistrict of Metro. Zoological Park & Museum Dist. v. Lewis*, No. 4:06-cv-1250-TCM, 2007 WL 9805608, at *6 (E.D. Mo. May 31, 2007) (citing Mo. Rev. Stat. § 417.061.1). To prevail on a trademark dilution claim, a plaintiff must show: (1) its mark or trademark was valid at common law; (2) that its mark is distinctive; and (3) that defendant's use of its name created a likelihood of dilution of the distinctive quality of plaintiff's mark. *Gilbert/Robinson v. Carrie Beverage-Missouri, Inc.*, 758 F. Supp. 512, 528 (E.D. Mo. 1991). In the instant Motion, elements two and three are at issue.

#### A.  **Direct Competitiveness**

Defendants first assert that Plaintiff failed to state a plausible claim under Missouri's anti-dilution statute because the parties market similar and competitive services under the relevant marks. Doc. [37] at 4. Defendants argue that dilution claims are limited to circumstances where

3

the marks are similar, but the services are not directly competitive. *Id.* Of course, here, the parties are directly competitive in the residential home building market, engage in nearly identical services, and produce nearly identical goods. However, Defendants fail to cite any case law where a claim was dismissed at this stage of litigation because the parties were directly competitive. To the contrary, federal courts sitting in Missouri have found dilution to exist even when parties are directly competitive. *See, e.g.*, *Cmty. of Christ Copyright Corp. v. Devon Park Restoration*, 683 F. Supp. 2d 1006, 1016 (W.D. Mo. 2010), *aff'd*, 634 F.3d 1005 (8th Cir. 2011) (finding a violation of Missouri's anti-dilution statute by a competitor's mark); *Emerson Elec. Co. v. Emerson Quiet Kool Corp.*, 577 F. Supp. 668, 673 (E.D. Mo. 1983) (same); *Hanesbrand, Inc. v. Seduzione Leggs, LLC*, No. 4:11-cv-00569-BCW, 2014 WL 12605457, at *4, *6 (W.D. Mo. July 21, 2014) (granting summary judgment in favor of plaintiff's Missouri dilution claim notwithstanding the fact that the "[p]laintiffs' products and [d]efendants' products compete with each other"). Thus, while direct competitiveness may ultimately result in the failure of Plaintiff's dilution claim, those inquiries are not decisive on a motion to dismiss.[2]

### B. **Similarity of the Marks**

Defendants next argue that Plaintiff failed to state a plausible claim under the Missouri anti-dilution statute because the parties' respective marks are not "similar." Doc. [37] at 5. A

---

[2] In this Court's Memorandum and Order on Plaintiff's Motion for a Temporary Restraining Order ("TRO Order"), Doc. [30], the Court determined that Plaintiff had not demonstrated a likelihood of success on the merits of its state-law trademark dilution claim. Doc. [30] at 15. However, a TRO is an extraordinary remedy and requires a different standard than deciding a motion to dismiss. In deciding whether to issue a TRO, a court must consider the following four factors: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the harm that granting the injunction will inflict on the other parties; (3) the probability that the movant will prevail on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). In contrast, for Plaintiff to survive a motion to dismiss, the complaint must simply contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Additionally, in deciding the TRO, the Court not only reviewed Plaintiff's Complaint, but also the motion for TRO, related papers and exhibits, and oral arguments. Doc. [30] at 1. As explained in this Memorandum and Order, at this stage, the Court finds that Plaintiff pleaded sufficient factual matter, accepted as true, to state a claim under Missouri's anti-dilution statute, irrespective of any conclusions the Court reached in its TRO Order.

dilution claim will fail where there is "no strong similarity" between a defendant's mark and a plaintiff's mark. *Phoenix Entertainment Partners, LLC v. Ryco Enterprises, LLC*, 306 F. Supp. 3d 1121, 1129 (E.D. Mo. 2018).  Although dilution cannot be shown by solely demonstrating likelihood of confusion, courts find such evidence probative of "similarity." *See Moresource Inc. v. ExtraHelp, Inc.*, No. 4:13-cv-235-DNN, 2013 WL 2338406, at *4 (E.D. Mo. May 29, 2013).

      Here, Plaintiff pleads actual confusion on the part of consumers and the general public and also provides specific incidences of actual confusion. *NLC, Inc. v. LENCO Elecs., Inc.*, 798 F. Supp. 1419, 1426 (E.D. Mo. 1992) (finding evidence of actual confusion as probative evidence of violating Mo. Rev. Stat. § 417.061).  The pleadings show that Defendants also felt the brunt of such confusion as they listed a disclaimer on their website rejecting any affiliation with Plaintiff in an effort to limit ongoing consumer confusion. As such, Plaintiff alleges that Defendants' continued use of its marks will adversely affect the distinctiveness of Fischer Marks, thereby causing members of the public to have difficulty distinguishing Defendants' services from Plaintiff's services.  The gravamen of a dilution claim is that the continuing use of a mark similar to plaintiff's mark will inevitably have an adverse effect upon the value of plaintiff's mark and that if he is powerless to prevent such use, the plaintiff's mark will eventually be deprived of all distinctiveness. *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 636 F. Supp. 2d 891, 902 (E.D. Mo. 2009), *aff'd*, 613 F.3d 754 (8th Cir. 2010) (quoting *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1332 (8th Cir. 1984)). Thus, at this stage, Plaintiff has pleaded enough facts to show that there is similarity between Fischer Marks and Defendants' mark.  And although "inherent in a dilution action under Missouri law is a showing of similarity between the marks," *id.* at 770, such a fact intensive inquiry is inappropriate at the motion to dismiss stage. *Moresource*, 2013 WL 2338406, at *4 (emphasizing that a similarity inquiry for dilution claims is fact-intensive, so therefore

5

generally inappropriate to resolve on a motion to dismiss). Because whether the parties' marks are sufficiently similar to create a likelihood of dilution is a merits question, the Court finds this inquiry inappropriate for resolution in the instant Motion in this case.

### C. **Distinctiveness**[3]

Only marks that are unique or distinctive are entitled to protection under Missouri's anti-dilution statute. *Sensient*, 613 F.3d at 903. Courts typically analyze the strength of marks on a distinctiveness spectrum, by categorizing[4] marks as either generic, descriptive, suggestive, or arbitrary. *General Mills v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987) (citing *Co–Rect Prod., Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1329 (8th Cir. 1985)). Personal names are classified as descriptive terms. *See JDR Indus. v. McDowell*, 1221 F. Supp. 3d 872, 885 (D. Neb. 2015) (classifying a surname as "descriptive"); *see also Schlafly v. Saint Louis Brewery, LLC*, 909 F.3d 420, 425 (Fed. Cir. 2018) (explaining that "the trademark statute provides that words that are primarily merely a surname can be registered trademarks if they have acquired secondary meaning"). Here, Plaintiff's mark consists only of surnames – FISCHER & FRICHTEL and FISCHER – thus, the marks at issue are classified as "descriptive," and therefore require secondary meaning for protection under trademark law. *Id.*; *see also Co–Rect Prods.*, 780 F.2d at 1329 ("A descriptive mark designates the characteristics, qualities, effects, or other features of the

---

[3] Plaintiff and Defendants dispute which elements must be pleaded in a Missouri dilution claim to survive a motion to dismiss. Defendants cite to *Anheuser Busch, Inc. v. VIP Products, LLC*, 666 F. Supp. 2d 975, 988 (E.D. Mo. 2008), to bolster its argument that an alleged mark must be "particularly strong." Plaintiff cites to *Gilbert/Robinson*, which requires the mark to be "distinctive." Based on case law, the Court concludes that the strength and distinctiveness of a mark conceptually overlap and are used interchangeably. *See Insty Bit, Inc. v. Poly–Tech Industries, Inc.*, 95 F.3d 663, 672 (8th Cir. 1996) (explaining that "[c]onceptual distinctiveness is analyzed to determine whether a plaintiff's mark is strong enough to merit trademark protection"); *Frosty Treats Inc. v. Sony Computer Ent. America Inc.*, 426 F.3d 1001, 1008 (8th Cir. 2005) (recognizing that when a mark is "strong and distinctive," it will be entitled to greater protection than a weak one); *Gilbert/Robinson*, 758 F. Supp. at 525 (explaining how a "[s]trong mark is a distinctive quality fostered by advertising, continuous use, and a significant amount of money generated in sales").

[4] Each term has a specific meaning and a is entitled to varying protection depending on its classification.

product, and is protectable only if shown to have become distinctive, that is, shown to have acquired a secondary meaning.").

Trademark protection extends to descriptive marks only if the marked terms have become distinctive by acquiring "secondary meaning." *Duluth News-Tribune v. Mesabi Publishing Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996). The Eighth Circuit makes clear that secondary meaning is established only where a mark, by long and exclusive use and advertising in the sale of the user's goods, has become so associated in the public mind with such services that it serves to identify them and distinguish them from the services of others. *Co–Rect Prod.*, 780 F.2d at 1330; *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994). Circumstantial evidence may be used to show secondary meaning, including: evidence of the exclusivity, length and manner of use of the mark, the amount and manner of advertising, the number of sales and customers, the plaintiff's established place in the market, and the existence of intentional copying. *Frosty Treats Inc. v. Sony Computer Ent. America Inc.*, 426 F.3d 1001, 1005–06 (8th Cir. 2005).

In the case at bar, Plaintiff must plead facts showing that through long and exclusive use in the sale of Plaintiff's services, Fischer Marks have become so associated in the public mind with such services that the marks serve to identify Plaintiff as the source of the service and to distinguish them from those of others. *Aromatique*, 28 F.3d at 870. Defendants argue that Plaintiff has not adequately pleaded that its marks are "particularly strong," Doc. [37] at 5, and thus, are not distinctive. The Court disagrees and finds that Plaintiff has pleaded sufficient facts that the descriptive Fischer Marks may have acquired a secondary meaning.

First, Plaintiff pleaded facts showing that the Fischer Marks may have acquired secondary meaning through long, continuous use and extensive advertising. Plaintiff alleges it has been "building quality homes in the St. Louis area for over 75 years under the FISCHER or FISCHER

7

& FRITCHEL trade names" and that use of its marks has been "exclusive and continuous for the last 70 years" in the St. Louis area. Doc. [1] at ¶¶ 9-10. *Frosty*, 426 F.3d at 1006 (finding persuasive evidence of secondary meaning that a mark was used in a "in a continuous and substantially exclusive manner" for years). Plaintiff also alleges that it spends roughly $200,000/year on advertising, running ads using the Fischer Marks every day of the year, utilizing a variety of media in its marketing campaigns such as "print, internet, social media, radio, direct mail, and exterior signage advertising." *Zoological Subdistrict*, 2007 WL 9805608, at *4 (finding a descriptive mark had acquired secondary meaning based on spending a substantial sum in advertising itself in print, outdoor signage, and electronic media); *Andy's Frozen Custard v. Neager*, No. 2:20-cv-4258, 2021 WL 232456, at *3 (W.D. Mo. June 7, 2021) (finding a mark "distinctive," in part, based upon the company spending "substantial time, money, and effort in developing consumer recognition and awareness of its [the] brand"); *Cushman v. Mutton Hollow Land Dev., Inc.*, 782 S.W.2d 150, 159–60 (Mo. Ct. App. 1990) (finding that a probative factor of secondary meaning is advertising and sales volume going into the creation or development of a secondary meaning); *see also, Heartland Bank v. Heartland Home Finance, Inc.*, 335 F.3d 810, 820 (8th Cir. 2003) (discussing "reasonable inferences" that can be drawn by a court to find secondary meaning from evidence of money spent in advertising, the type of advertising used, long-term usage of the mark, and sales volume).

Second, Plaintiff pleaded facts showing that the Fischer Marks may have acquired secondary meaning by becoming "so associated in the public mind." *Co–Rect Prod.*, 780 F.2d at 1330. As an example, Plaintiff pleaded that when Defendants announced their acquisition of the St. Louis based company, the public congratulated Plaintiff, thinking the two marks were the same, thus, showing that the public recognizes the Fischer name and associates it with a single source.

8

*Frosty*, 426 F.3d at 1005 (explaining that secondary meaning requires the public to recognize the mark and "associate it with a *single* source" (emphasis added)); *Dynamic Sales Co. v. Dynamic Fastener Serv., Inc.*, 803 S.W.2d 129, 131–32 (Mo. Ct. App. 1990) (finding secondary meaning "by evidence that the mark has become associated in the mind of the public as identifying the source of the goods or services"); *Steak n Shake Co. v. Burger King Corp.*, 323 F. Supp. 2d 983, 992 (E.D. Mo. 2004) (finding secondary meaning exists when a mark is associated by consumers with a particular producer or distributor, rather than with the product itself).

Finally, Plaintiff pleaded facts showing that the Fischer Marks may have acquired secondary meaning through Plaintiff's established place in the market and the public recognition it receives. Plaintiff alleges that its 75-plus years of building quality homes in the St. Louis area and the quality and service has led to "numerous awards spanning many years." *Cushman*, 782 S.W.2d 159 (determining whether a mark acquired a secondary meaning as a trade name is determined by public recognition); *Andy's*, 2021 WL 232456, at *3 (finding a mark "distinctive," in part, based upon building "goodwill" of services). Further, Plaintiff alleges that its customers and the media (when writing reviews or stories) refer to Plaintiff as its trademark names, "Fischer," or "Fischer & Frichtel." *Cushman*, 782 S.W.2d at 159 (stating that a strong showing of secondary meaning is made by a showing that there exists evidence which is probative of the success of the efforts to "popularize" a mark); *Zoological Subdistrict*, 2007 WL 9805608, at *4 (finding that a descriptive name acquired secondary meaning based on how the business is identified in the market). Because Plaintiff has pleaded sufficient facts that the Fischer Marks have acquired secondary meaning through long, continuous use, extensive advertising, and public acceptance of the mark, the Court concludes that Plaintiff has pleaded enough facts to render it plausible that their marks are distinctive vis-à-vis secondary meaning. And although Plaintiff may ultimately be

9

unable to prove that its marks deserve protection, it need not make any more specific allegations of secondary meaning at the pleading stage.

Therefore, the Court denies Defendants' Motion to Dismiss Count III.

### Conclusion

At this stage in in the proceedings, Plaintiff successfully pleaded plausible factual allegations showing that in consumers' minds, the Fischer Marks have become associated with a particular source, and thus, have acquired secondary meaning to potentially receive protection under the Missouri anti-dilution statute, Mo. Rev. Stat. § 417.061.1.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim as to Count III, Doc. [36], is **DENIED**.

Dated this 4th day of November, 2021.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE